UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| REGIONS BANK, | ) | |
| | ) | |
| Counter-Claimant, | ) | Civil Action No. 5: 18-014-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STEVEN K. LENOX, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Counter-Defendant. | ) | |

*** *** *** ***

Regions Bank ("Regions") loaned Steven Lenox ("Lenox") $465,000.00 to buy a houseboat. After Lenox defaulted on the loan, Regions repossessed the houseboat and sold it at a private sale for $287,500.00. Regions now seeks $140,682.32, which it claims is the deficiency Lenox owes under the terms of the loan agreement. Lenox contends that Regions may not collect the deficiency because the sale of the houseboat was not commercially reasonable. The parties have filed cross-motions for summary judgment [Record Nos. 47, 49], which will be denied because the Court cannot determine as a matter of law whether the sale of collateral was commercially reasonable.

## I.

Lenox filed a Complaint in January 2018, alleging that Regions Bank harmed him by violating provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.[1] Lenox reported that after he fell "one or two payments behind" on his loan from Regions,

---

[1] Lenox also brought FCRA claims against Experian Information Solutions, Inc. but the parties agreed to dismiss those claims with prejudice in June 2018. [Record Nos. 20, 30]

Regions repossessed the houseboat and sold it. When Lenox subsequently applied for a loan with a different lender, he learned that Regions had furnished information to credit reporting agencies indicating that his loan for the houseboat was charged-off and that payment was $10,942.00 past due. Lenox maintained that, because Regions failed to dispose of the collateral in a commercially reasonable manner, it forfeited the right to collect a deficiency balance and violated the FCRA by providing this information to credit reporting agencies.

Regions denied these allegations and filed a Counterclaim against Lenox, alleging that it sold the houseboat in a commercially reasonable manner on August 27, 2014, and that Lenox remains indebted to Regions in the amount of $140,682.32. [Record No. 17] In November 2018, the Court granted Lenox's unopposed motion to dismiss his claims against Regions, without prejudice. [Record Nos. 44, 45] At that point, Regions' Counterclaim against Lenox became the only remaining issues to be resolved.

## II.

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute regarding any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When the moving party will bear the ultimate burden of proof at trial, summary judgment is appropriate only when it submits evidentiary materials to establish all elements of the claim or defense. *United States v. McCain*, No. 06-13830, 2007 WL 2421471, at *3 (E.D. Mich. Aug. 22, 2007) (collecting cases). Put differently, in this situation, the moving party "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial" *Id.* (quoting William

W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment* Motions, 139 F.R.D. 441, 477-78 (1991)).

Conversely, when the moving party does not bear the ultimate burden of proof, it has the initial burden of showing the absence of evidence on an essential element of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 323. And once the movant satisfies that burden, the burden shifts to the non-moving party to "set forth specific facts showing a triable issue." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court ultimately must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). *See also Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The standards for evaluating motions for summary judgment do not change simply because "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382 (6th Cir. 2016) (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id.* (internal citation omitted).

### III.

A secured party may recover a deficiency judgment from a defaulting debtor after selling the collateral for less than the amount the debtor owes. *Rexing v. Doug Evans Auto Sales, Inc.*, 703 S.W.2d 491, 493 (Ky. Ct. App. 1986). It typically is required to establish that

"it acted with commercial reasonableness in the holding and disposition of the collateral in question." *Bailey v. Navistar Fin. Corp.*, 709 S.W.2d 841, 842 (Ky. Ct. App. 1986) (quoting *Bank of Josephine v. Conn*, 599 S.W.2d 773, 774 (Ky. Ct. App. 1980)). However, Regions contends that Lenox must prove that Regions' sale of the houseboat was commercially *un*reasonable because he initiated litigation against Regions in the first instance.

Regions' burden-shifting theory is based largely on the Sixth Circuit's decision in *Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479 (6th Cir. 2009). There, a client brought a legal malpractice claim against a law firm following the firm's failure to prosecute the client's underlying action against a creditor for the allegedly commercially unreasonable sale of a horse that had been repossessed. The law firm stipulated that it failed to prosecute the matter, but argued that Pivnick would not have succeeded in the underlying action against the creditor.

In determining which party bore the burden of proving commercial reasonableness, the Court noted that the underlying suit was not a typical case in which a creditor brought suit against a debtor to collect a deficiency judgment. *Id.* at 487 (citing *Bank of Josephine*, 599 S.W.2d 773; *Bailey v. Navistar Fin. Corp.*, 709 S.W.2d 841 (Ky. Ct. App. 1986)). Although the creditor asserted a counterclaim for a deficiency judgment, Pivnick had initiated the action in an attempt to recover losses allegedly caused by the secured party's failure to dispose of property in a commercially reasonable manner. Accordingly, Pivnick bore the burden of proving that the sale was commercially unreasonable. *Id.* at 487.

This matter *was* procedurally similar to *Pivnick*, but the parties agreed to dismiss Lenox's claims against Regions without prejudice. [Record Nos. 44, 45] At that point, this action became a creditor's suit to collect a deficiency judgment from a debtor. As a result, the

- 4 -

typical standard of proof in which the plaintiff (here, Counter-Claimant Regions) bears the burden of proving each element of its claim applies.

**IV.**

Lenox obtained a $465,000.00 loan to purchase the subject houseboat in June 2006. [Record No. 47-2] Lenox granted Regions Bank a security interest in the houseboat. The parties' contract required Lenox to make monthly payments to Regions in the amount of $3,635.91 for 240 months. After Lenox failed to make the required payments, Regions repossessed the houseboat in July 2014. [Record No. 47-2] Later in July, Regions sent Lenox a "Notice of Intent to Sell Property," and the houseboat was sold the following month for $287,500.00. *Id.* Regions contends that, following the sale, Lenox remains indebted to Regions in the amount of $140,682.32, representing the sum of the deficiency balance ($72,675.41), together with unpaid interest ($11,380.10), late fees ($1,053.61) and repossession expenses ($55,563.20). *Id.*

Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. Ky. Rev. Stat. § 355.9-610 (2014). A disposition of collateral is deemed to have been made in a commercially reasonable manner if the disposition is made: (1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition. Ky. Rev. Stat. § 355.9-627 (2014). The fact that a higher price could have been obtained in a disposition does not, in itself, constitute commercial unreasonableness. *Id.* However, "a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable." U.C.C. § 9-627 cmt. 2.

Comments to the Uniform Commercial Code define a "recognized market" as "one in which the items sold are fungible and prices are not subject to individual negotiation. For example, the New York Stock Exchange is a recognized market." U.C.C. § 9-610, cmt. 9. "A market in which prices are individually negotiated or the items are not fungible is not a recognized market, even if the items are the subject of widely disseminated price guides or are disposed of through dealer auctions." *Id.* Because houseboats are not sold on a "recognized market," Regions must demonstrate that its sale of the collateral conformed with reasonable commercial practices among dealers of houseboats.

Courts have recognized various factors for consideration in determining commercial reasonableness. They include: the type and condition of collateral involved; normal commercial practices in disposing of the type of collateral; the time and place of the sale; the amount of advertising done; the number of bids solicited and; the purchase price received. *See Raceday Ctr., LLC v. RL BB Fin., LLC*, Nos. 2:11-CV-17, 3: 11-CV-49, 2013 WL 11505550 (E.D. Tenn. Aug. 7, 2013) (applying Tennessee law); *Connecticut Bank & Trust Co., N.A. v. Incendy*, 540 A.2d 32, 39 (Conn. 1988) (collecting cases). Lenox contends that Regions has not satisfied the requirements of Ky. Rev. Stat. § 355.9-627 because it did not submit proof that the sale was advertised, of who or how many people attended the sale, or that the sale was conducted in a recognized market for the sale of houseboats. [Record No. 48-1, p. 6] Lenox also argued that there was no pre-sale appraisal and that there was no support for the "staggering" amount of repossession expenses.

Regions has come forward with some proof to demonstrate that its sale of the houseboat was commercially reasonable. Brian Donahue, Regions' Assistant Vice President of Consumer Collections, provided a declaration stating that, following Lenox's default on the

loan, the collateral was lawfully repossessed.  [Record No. 47-2]  Regions indicated in answers to interrogatories that Marina Mile Yacht Sales, Inc. ("Marina Mile") repossessed the houseboat on Regions' behalf and sold it at a commercially reasonable private sale in Jamestown, Kentucky, on August 27, 2014.  [Record No. 50-1, p. 13]

Marina Mile prepared a sales condition report approximately one month prior to the sale.  [Record No. 50-2]  The 2006 one-hundred-foot Fantasy houseboat needed some repairs, but otherwise was in good condition.  The appraiser noted that there was a 2007 one-hundred-and-five-foot model for sale for $385,000.00, and estimated the collateral's sale price at $300,000.00 to $340,000.00.  *Id.*  Ale Four, LLC ultimately purchased the houseboat for $287,500.00.  *Id.* at pp. 16-17.  Two other individuals made bids in the amounts of $215,000.00 and $225,000.00.  *Id.* at p. 17.

Regions also seeks to recover its expenses incurred in the repossession and sale of the houseboat.  In support, it has provided a "vehicle accounting transaction summary," which contains an itemized list of Marina Mile's charges.  The charges include: a $28,750.00 auction sale fee; $1,575.00 for repossession; and $25,150.00 for storage.  [Record No. 50-4]

As a general rule, the question of what is "commercially reasonable" is a question of fact.  *McCoy v. Am. Fidelity Bank & Trust Co.*, 715 S.W.2d 228, 230 (Ky. 1986).  Although the evidence may be so one-sided that summary judgment is appropriate, a jury issue exists "when the state of the evidence is such that, although the evidentiary facts are not in dispute, reasonable minds can differ" regarding commercial reasonableness.  *Id.* at 231.  Here, Regions has failed to provide any specific information regarding reasonable commercial practices among dealers in houseboats, and whether its conduct conformed to those practices.  It also has failed to provide any information regarding the reasonableness of its charges for storage,

repossession, and an auction fee. *See Fifth Third Bank v. Miller*, 767 F. Supp. 2d 735, 738-39 (E.D. Ky. 2011) (Court denied summary judgment when creditor failed to provide evidence regarding reasonable commercial practices among dealers in horses). And although the sale proceeds approach the low end of Marina Mile's estimate, there is no evidence demonstrating how the estimate was calculated or whether it was reasonable.

Regions' motion for summary judgment will be denied because the Court cannot conclude that the sale of collateral conformed with reasonable commercial practices among houseboat dealers. However, Regions has offered some evidence of commercial reasonableness and it is possible that a jury could conclude that the sale was commercially reasonable. Accordingly, Lenox's motion for summary judgment must be denied, as well.

**V.**

Counsel for Lenox reported in his motion for summary judgment that he has had no contact with Plaintiff Lenox since May 2018, despite numerous attempts to contact him by all known telephone numbers and by sending letters to his residential and business addresses. [Record No. 49, pp. 1-2] According to counsel, Lenox's family member answered Lenox's personal cell phone in August 2018 and advised that "Lenox had health issues that were incapacitating and that he had no ability to participate in this legal action nor was there any reasonable prospect of his being able to do so in the future." *Id.* at p. 2. Without Lenox's participation, counsel filed a response/counter-motion to Regions' motion for summary judgment, making such good faith arguments as counsel deemed available to Lenox. *Id. See also* Ky. S.C.R. 3.130(1.14).

The precise reasons for Lenox's failure to participate in this litigation since May 2018 are unclear. While the Court must protect the interests of an incompetent defendant, *see* Fed.

R. Civ. P. 17(c)(2), there is no indication that a state-court finding of incompetence exists in this case.  *See Blackwell v. Capital One Bank*, No. 606CV066, 2007 WL 1732192, at *1 (S.D. Ga. June 13, 2007).  Additionally, a competent defendant may not avoid liability by electing to be absent.  *See Miller v. Paoli*, 188 N.E.2d 730 (Ill. Ct. App. 1963).  While an attorney with sufficient information to reasonably believe his client is incompetent may seek protective action, Ky. S.C.R. 3.130(1.14), lawyers are not required to continue representation when a client's conduct has made doing so unreasonably difficult.  *See* Ky. S.C.R. 3.130(1.14).

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.     Regions Bank's motion for summary judgment [Record No. 47] is **DENIED**.

2.     Lenox's motion for summary judgment [Record No. 49] is **DENIED**.

3.     The matter remains scheduled for a jury trial beginning on June 3, 2019.

Dated: January 24, 2019.

Signed By:

*Danny C. Reeves*

United States District Judge